UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ZAMBEZIA FILM (Pty.) LTD.,

   Plaintiff,

   v.

DOES 1 - 47,
DOES 1 - 66,
DOES 1 - 66,
DOES 1 - 66,
DOES 1 - 66,
DOES 1 - 70,
DOES 1 - 48,
DOES 1 - 58,
DOES 1 - 51,
DOES 1 - 51,
DOES 1 - 18,
DOES 1 - 57,
DOES 1 - 47,

   Defendants.

Case No. C13-0307JLR-RSL
Case No. C13-0308MJP-RSL
Case No. C13-0309RAJ-RSL
Case No. C13-0310TSZ-RSL
Case No. C13-0311RAJ-RSL
Case No. C13-0312JLR-RSL
Case No. C13-0313RAJ-RSL
Case No. C13-0314JLR-RSL
Case No. C13-0315RSM-RSL
Case No. C13-0316RSL
Case No. C13-0317MJP-RSL
Case No. C13-0318RSL
Case No. C13-0319RSM-RSL

ORDER LIFTING STAY AND
EXTENDING SERVICE DEADLINE

These thirteen actions were filed on February 18, 2013. Each of the Doe defendants is identified only by an IP address linked to the on-line sharing of the movie "Adventures in Zambezia." Plaintiff asserts direct and contributory copyright infringement claims against each Doe defendant. The Court granted plaintiff's motions to initiate early discovery from internet service providers in order to obtain information sufficient to identify the owner of each IP address. During the months that these actions

ORDER LIFTING STAY AND
EXTENDING SERVICE DEADLINE - 1

were pending, none of the defendants was served, nor did plaintiff amend its complaint to identify any of the Doe defendants.

In mid-May 2013, the Court issued orders to show cause acknowledging concerns regarding the propriety of joinder and the possibility that plaintiff was using the judicial authority of the United States to wrest improvident settlements from *pro se* litigants under threat of huge statutory penalties.  The Court stayed the above-captioned matters and required plaintiff to provide copies of all written communications with the owners of the IP addresses, summaries of all oral communications with those individuals, proof of The Ledge Distribution, LLC's ownership of the copyright at issue, and the identification of all members/owners/stakeholders of The Ledge Distribution, LLC, both direct and indirect, in the form of an organizational tree that reaches back far enough to reveal all individual members/owners and publicly-traded corporations.  In addition, the Court ordered plaintiff to show cause why these cases should not be dismissed for improper joinder and/or pursuant to the Court's inherent authority to control its docket. Having reviewed plaintiff's response, the Court finds as follows:

**A.  Joinder**

Federal Rule of Civil Procedure 20(a)(2) imposes two specific requirements for the permissive joinder of defendants.  First, the right to relief against defendants must arise out of "the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2)(A).  Second, there must be some question of law or fact common to all defendants.  Fed. R. Civ. P. 20(a)(2)(B).  Taking the well-pled factual allegations of the complaint as true and considering the declarations of plaintiff's investigator, the Court finds that these requirements are easily met.  As to each separate lawsuit, plaintiff's investigator found that a user of the IP addresses identified in the action possessed a pirated copy of "Adventures in Zambezia," that each copy was a reproduction of the same

ORDER LIFTING STAY AND
EXTENDING SERVICE DEADLINE - 2

original, and that the user offered for download a portion of its pirated copy at the investigator's request, contributing to a fully-playable version of the movie. Depending on how one characterizes this activity, plaintiff's claims for relief arise from either the same transaction (*i.e.*, its investigator's successful download of a single copy of "Adventures in Zambezia") or a related series of transactions (*i.e.*, the incremental downloads of portions of the movie from each identified IP address). Litigating the cases will also involve common questions of fact and/or law regarding the existence of a swarm, the alleged downloads, plaintiff's ownership of the copyright, and the elements of infringement. The fact that persons associated with the IP addresses may have individual defenses to plaintiff's claims does not change the fact that there will be some common questions of law or fact: not all of the legal and factual issues must be identical as to all defendants. Patrick Collins, Inc. v. Does 1-21, 282 F.R.D. 161, 168 (E.D. Mich. 2012).

        Although the specific requirements of Rule 20 are met, the Court must also determine whether permissive joinder will "comport with the principles of fundamental fairness." Coleman v. Quaker Oats Co., 232 F.3d 1271, 1296 (9th Cir. 2000). Factors relevant to this determination include the possible prejudice to any party, delay caused by joinder, the motives for joinder, the closeness of the relationship between the joined parties, notice to the parties, and the effect of joinder on jurisdictional issues. Desert Empire Bank v. Ins. Co. of N. Am., 623 F.2d 1371, 1375 (9th Cir. 1980). In the Ninth Circuit, "[w]e start with the premise that Rule 20 . . . is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits." League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency, 558 F.2d 914, 916-17 (9th Cir. 1977).

        Jointly litigating the facts related to the thirteen swarms plaintiff has identified and the legal issues related to infringement is more efficient for plaintiff and the

ORDER LIFTING STAY AND
EXTENDING SERVICE DEADLINE - 3

1 Court than litigating hundreds of suits involving only one IP address each.  In addition,
2 the nature of the swarm and the BitTorrent protocol, with its many pieces and multiple
3 sources, suggests that joint litigation may be necessary for plaintiff to substantiate its
4 theory that defendants acted in concert to download copyrighted material, even if the
5 segment downloaded from a particular defendant, considered alone, might not constitute
6 copyright infringement.  Defendants, on the other hand, gain no appreciable advantage
7 through individual litigation:  in either case, defendants will be able to offer individual
8 defenses to the allegations.  Nor does there appear to be any significant risk of liability by
9 association.[1]  Jointly litigating these claims also allows defendants, many of whom will
10 undoubtedly proceed *pro se*, to pool resources, rely on arguments raised by other
11 defendants, and/or benefit from the participation of retained counsel.  The only potential
12 advantage to severance appears to be the hope that plaintiff will give up its claims, no
13 matter how meritorious, in the face of mounting costs.  If, as the Court is willing to
14 assume at this stage in the proceeding, plaintiff's allegations are true and its copyright has
15 been infringed, such a result is neither just nor fair.

16      The Court further finds that there is no indication that joinder will impact
17 the Court's subject matter jurisdiction and that defendants' alleged participation in a
18 knowing and intentional file-sharing scheme constitutes interrelated acts justifying joint
19 litigation even if defendants remained unaware of the identity of their fellow BitTorrent
20 users.

21      The Court is, however, concerned about the impact that joinder has had on
22 the handling of related litigation and how that handling reflects on plaintiff's motives for
23 amassing the groups of defendants in these cases.  To be clear, the Court finds that joinder

---

[1] Contra Voltage Pictures, LLC v. Does 1-12, No. 2:13-292-AA, 2013 WL 1900597 (D. Or. May 4, 2013) (finding availability of statutory damages and potential that unintentional infringers could be prejudiced by being sued along with original seeder and/or serial infringers precludes joinder).

ORDER LIFTING STAY AND
EXTENDING SERVICE DEADLINE - 4

under Rule 20 for purposes of prosecuting copyright infringement claims against members of a swarm in a single lawsuit can be appropriate. There is no indication, however, that plaintiff was actually prosecuting any of these actions.[2] Despite receiving identifying information regarding some of the individuals associated with the IP addresses at issue, plaintiff failed to affect service, asserting that complications in obtaining subscriber information regarding every IP address somehow prevented it from naming any individual defendants. This approach to litigation has caused delay and raises all sorts of potential for abuse, as discussed more fully below. In addition, the failure to prosecute the actions suggests that the motive for joinder is not to promote the underlying goals of efficiency, justice, and expeditious resolution of the disputes, but rather to use the pendency of this litigation to obtain unilateral discovery regarding non-parties and to push for quick (and potentially unjustified) settlements.

In the circumstances of this litigation, the Court finds that joint litigation against numerous participants in a single swarm satisfies the specific requirements of Rule 20(a)(2) but that the joinder has been used to create a procedural imbalance which, left unchecked, would not comport with the principles of fundamental fairness.

**B. Lack of Service**

Pursuant to Fed. R. Civ. P. 4(m), "[i]f a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time." The time for service has now passed, but

---

[2] In response to the various orders to show cause issued in this and the related copyright infringement cases, counsel provided virtually identical memoranda and declarations, making it impossible to determine exactly what steps plaintiff took to prosecute these particular actions or what communications were had with one or more of the Doe defendants in these thirteen cases. The Court will therefore assume that counsel took the exact same steps and engaged in the same types of communications with regards to all of the pending cases.

ORDER LIFTING STAY AND
EXTENDING SERVICE DEADLINE - 5

plaintiff had a little more than a month left on the service clock when the above-captioned matters were stayed. There is no reason to assume that timely service would have been affected, however. Months after these cases were filed against 711 Doe defendants, no proofs of service were on record (as required by Rule 4(l)), and plaintiff had not moved to amend its complaints to identify a single defendant by name, even though that information had, in some instances, been obtained. Given the manner in which counsel prosecuted the R&D Film 1 and Flypaper Distribution cases, it appears that plaintiff intended to pursue discovery and settlement negotiations without serving any defendants.

As subscribers became aware of the lawsuits, they predictably began contacting plaintiff's counsel in order to obtain information. Counsel apparently referred them to a webpage of "Frequently Asked Questions," invited them to prove their innocence, and/or negotiated settlements. In addition, counsel sent demand letters to a handful of defendants in these cases, copies of which were filed under seal. Despite the Court's instruction, plaintiff has not summarized its oral offers of settlement, and there are obvious gaps in the communication strings provided for the Court's review. The Court is therefore left to guess regarding the tenor and accuracy of statements made to potential defendants. The little information available to the Court is not reassuring.

Counsel's "educational FAQ website" is found at www.fronteirlawgroup.wordpress.com and attached to this Order as Exhibit A. The first question is "Why am I being sued?" Of course, the individual reading the FAQs has not yet been sued, and plaintiff does nothing to clarify the procedural posture of the case. The second question is about the justification for the settlement demand amount, but it is not clear how or when a settlement demand was made. The FAQs themselves are silent on this issue, although they do mention the maximum statutory penalties and a $675,000 jury verdict in a copyright infringement action in the District of Massachusetts.

ORDER LIFTING STAY AND
EXTENDING SERVICE DEADLINE - 6

Plaintiff's advice regarding the association of counsel (the court will not appoint counsel in a civil suit) and the validity of possible defenses (failure to password protect and/or monitor the use of your internet connection may constitute negligence) is suspect. Finally, plaintiff invites the individual reading the FAQs to provide evidence proving that he or she did not download "Adventures in Zambezia." Much of this information – plus a proposed settlement amount – is repeated in the demand letters sent to a handful of putative defendants.

When plaintiff sought permission to conduct discovery in these cases, it represented the discovery as both limited and efficacious: by subpoenaing subscriber identification information from the ISPs, plaintiff would be able to pursue these lawsuits and protect its copyrights. It turns out, however, that identifying the account holder tells us very little about who actually downloaded "Adventures in Zambezia" using that IP address. As one court noted, "it is no more likely that the subscriber to an IP address carried out a particular computer function . . . than to say an individual who pays the telephone bill made a specific telephone call." In re BitTorrent Adult Film Copyright Infringement Cases, 2012 WL 1570765, at *3 (E.D.N.Y. May 1, 2012). In fact, it is less likely. Home wireless networks are ubiquitous, meaning that a single IP address can simultaneously support multiple computer devices throughout the home and, if not secured, additional devices operated by neighbors or passersby. Thus, the risk of false positives is very real. Digital Sin, Inc. v. Does 1-176, 279 F.R.D. 239, 243 (S.D.N.Y. 2012). It is not clear that plaintiff could, consistent with its obligations under Fed. R. Civ. P. 11, make factual contentions regarding an internet subscriber's infringing activities based solely on the fact that he or she pays the internet bill. Plaintiff seems to be aware of this problem and has refrained from identifying the Doe defendants more specifically even after it learns the name of the subscriber. Plaintiff does not, however, take the

1  appropriate steps of returning to the Court to seek an extension of time in which to serve
2  and permission to conduct additional discovery.  Rather, plaintiff demands that the
3  subscriber prove he or she did not download "Adventures in Zambezia."  Therein lies the
4  rub.  Plaintiff has effectively obtained access to unrepresented individuals and parleyed
5  that access into open-ended and unlimited discovery, despite the very narrow discovery
6  order entered by the Court.

7         In this context, the 120-day service deadline is the only thing that limits
8  plaintiff's unsanctioned discovery expedition.  If plaintiff feels it has enough information
9  to satisfy its Rule 11 requirements by simply identifying the subscriber associated with an
10 IP address, it should serve the complaint and initiate litigation subject to the limitations
11 imposed by the rules of civil procedure.  If, on the other hand, plaintiff would have
12 trouble justifying a factual contention that the internet subscriber must, by virtue of that
13 fact, be the downloader, it could seek an extension of the service deadline, explaining
14 why it was unable to obtain the information in a timely manner and identifying steps to be
15 taken that would allow litigation to begin.  If those steps include additional discovery,
16 further permission of the Court would be necessary.

17        In short, plaintiff must actually prosecute the claims it has asserted.
18 Instead, plaintiff's litigation strategy seems to be to use the mere pendency of these
19 actions to create a period of time in which it can scare subscribers into settlement as the
20 only means of avoiding both litigation costs and harsh statutory penalties.  The limited
21 communications disclosed to the Court show that plaintiff makes every effort to
22 "educate" the subscriber regarding the statutory penalties he or she faces.  Coupled with
23 the clear implication that evidence of IP address ownership is legally sufficient to
24 establish copyright infringement and the demand that the subscriber prove his or her
25 innocence, it is not surprising that subscribers – whether guilty or not – may choose to
26

ORDER LIFTING STAY AND
EXTENDING SERVICE DEADLINE - 8

1  settle.  While the risk of improvident settlements and overreaching[3] cannot be eradicated,
2  the Court will not allow plaintiff to pick and choose the procedural rules it likes while
3  ignoring deadlines and discovery limitations.  Absent extraordinary and unforeseeable
4  circumstances, the service deadline will be strictly enforced in order to reduce the risk of
5  overreaching.

7        For all of the foregoing reasons, the stay of the above-captioned cases is
8  hereby lifted and plaintiff may again pursue identifying information regarding the Doe
9  defendants from the ISPs pursuant to the Court's prior discovery order.  Plaintiff shall
10  have sixty days from the date of this Order to complete discovery and affect service.
11  Failure to file proof of service on or before the sixtieth day will result in the dismissal of
12  plaintiff's claims as to each unserved defendant.  The Court takes under advisement
13  issues regarding ownership of the copyright and/or plaintiff's failure to provide complete
14  information regarding communications with subscribers and the ownership of Zambezia
15  Film (Pty.) Ltd.

        Dated this 7th day of August, 2013.

                                    /s/ Robert S. Lasnik
                                    Robert S. Lasnik
                                    United States District Judge

---

[3] The settlement agreements filed under seal in this matter raise additional concerns.  The agreements not only specify the payment amount necessary to obtain a release of the copyright claims and the normal trappings of such an agreement, but also include a unilateral confidentiality provision, a unilateral non-disparagement provision, warranties running from the subscribers to plaintiff, a waiver of any right to challenge the validity of the copyright or plaintiff's ownership thereof, a patently false assertion that the parties jointly drafted the agreements, and a questionable declaration of federal jurisdiction.  Worse yet, a breach of any of the promises, representations, or warranties on the part of the subscribers will expose them to liability for plaintiff's attorney's fees and will resurrect the copyright infringement claims, but this time with arguments regarding validity and ownership foreclosed.  This enforcement provision runs only in favor of plaintiff.

ORDER LIFTING STAY AND
EXTENDING SERVICE DEADLINE - 9